**United States Court of Appeals**
**Fifth Circuit**

**F I L E D**

**August 19, 2003**

**Charles R. Fulbruge III**
**Clerk**

IN THE UNITED STATES COURT OF APPEALS

FOR THE FIFTH CIRCUIT

_____

No.: 02-41166
_____

HOWARD SCANLAN; DENISE SCANLAN; and LAUREN SCANLAN;

Plaintiffs/Appellants;

versus

TEXAS A&M UNIVERSITY; ET AL,
Defendant;

TEXAS A&M UNIVERSITY;
J. MALON SOUTHERLAND, in his individual capacity;
RUSSELL THOMPSON, in his individual capacity,
RAY BOWEN, in his individual capacity;
WILLIAM L. KIBLER, in his individual capacity; and
JOHN J. KOLDUS, III, in his individual capacity,

Defendants/Appellees.

_____

No.: 02-41173
_____

SEAN BREEN, as Administrator of the Estate of Christopher Breen;
CHRISTOPHER BREEN; JOHN E. BREEN; MARIAN K. BREEN;

Plaintiffs/Appellants;

versus

TEXAS A&M UNIVERSITY;
J. MALON SOUTHERLAND, in his individual capacity;
RUSSELL THOMPSON, in his individual capacity;
RAY BOWEN, in his individual capacity;

Defendants/Appellees.

1

_____

No.: 02-41187
_____

JAMES KIMMEL, as Representative of the Estate of Lucas Kimmel;
JAMES KIMMEL; WALIETA KIMMEL;

Plaintiffs/Appellants;

versus

TEXAS A&M UNIVERSITY; ET AL,
Defendants;

TEXAS A&M UNIVERSITY;
J. MALON SOUTHERLAND, in his individual capacity;
RUSSELL J. THOMPSON, in his individual capacity;
RAY BOWEN, in his individual capacity;
WILLIAM L. KIBLER, in his individual capacity; and
JOHN J. KOLDUS, in his individual capacity;

Defendants/Appellees.

_____

No.: 02-41204
_____

JACQUELYNN KAY SELF, Individually and
as Administratrix of the Estate of Jerry Don Self, Deceased;
KATHY MCCLAIN ESCAMILLA, Individually and as Administratrix of
the Estate of Bryan A. McClain, Deceased; PHIL R. MCCLAIN;
ANDREA HEARD, Individually and as Administratrix of the Estate of
Christopher Lee Heard, Deceased; LESLIE G. HEARD;
ANTHONY POWELL, Individually and as Administrator of the Estate
of Chad D. Powell, Deceased; BEVERLY JILL POWELL; MATTHEW ROBINS;
DOMINIC BRAUS; and NANCY BRAUS;

Plaintiffs/Appellants,

versus

TEXAS A&M UNIVERSITY; ET AL,
Defendants;

TEXAS A&M UNIVERSITY; RAY BOWEN; J. MALON SOUTHERLAND;
WILLIAM L. KIBLER; RUSSELL W. THOMPSON; JOHN J. KOLDUS, III;

2

M.T. HOPGOOD, JR., Major General; DONALD J. JOHNSON; ZACK COAPLAND; KEVIN JACKSON; JAMES R. REYNOLDS; ROBERT HARRY STITELER, JR.; and MICHAEL DAVID KRENZ;

Defendants/Appellees.

3

-----------------------

No.: 02-41222
-----------------------

JOHN ANDREW COMSTOCK and DIXIE ANN ZINNEKER;

Plaintiffs/Appellants;

versus

TEXAS A&M UNIVERSITY; ET AL,
Defendants,

TEXAS A&M UNIVERSITY;
J. MALON SOUTHERLAND, in his individual capacity;
RUSSELL THOMPSON, in his individual capacity;
RAY BOWEN, in his individual capacity;

Defendants/Appellees.

-----------------------

No.: 02-41244
-----------------------

BILL DAVIS,

Plaintiff/Appellant;

versus

TEXAS A&M UNIVERSITY; ET AL,
Defendants,

TEXAS A&M UNIVERSITY;
J. MALON SOUTHERLAND, in his individual capacity;
RUSSELL THOMPSON, in his individual capacity;
RAY BOWEN, in his individual capacity;
WILLIAM L. KIBLER, in his individual capacity; and
JOHN J. KOLDUS, III, in his individual capacity;

Defendants/Appellees.

_____

Appeals from the United States District Court
for the Southern District of Texas
_____

4

Before WIENER, CLEMENT and PRADO, Circuit Judges.

PRADO, Circuit Judge.

The above numbered and styled appeals arise from six lawsuits filed in the Southern District of Texas by, and on behalf of, those injured and killed during the Texas A&M University bonfire disaster that occurred on November 18, 1999. The district court dismissed all of the plaintiffs' claims and entered a final judgment in each lawsuit. The plaintiffs appealed to challenge the dismissal orders. After considering the parties' arguments on appeal, this Court reverses the district court's judgments.

## Background Facts

On November 18, 1999, the Texas A&M University bonfire stack collapsed, killing 12 students and injuring another 27. After the accident, the president of Texas A&M University (the University) convened a special commission to investigate the collapse. The investigating commission documented its findings and conclusions in the Final Report of the Special Commission on the 1999 Texas A&M Bonfire (Final Report). Subsequently, the appellants filed six lawsuits. In the lawsuits, the plaintiffs alleged section 1983 claims under the state-created danger theory and various state law claims against the University and various University officials (the University Officials) whom the plaintiffs hold responsible for their injuries.

5

From the outset, the district court limited discovery to the issue of qualified immunity.  The district court allowed five weeks to conduct discovery on that issue and set the deadline for dispositive motions four weeks later.  Eight weeks after the deadline for dispositive motions, the district court issued the orders challenged in these appeals, dismissing all of the plaintiffs' claims.  The court issued the same order in each case.

The district court's orders were quite clear.  The court first dismissed the plaintiffs' claims against the University as a state entity on Eleventh Amendment immunity grounds.  No plaintiff appeals that action.

Next, the district court adopted the Final Report and determined the actions of the University Officials did not, as a matter of law, rise to the level of deliberate indifference.  Based on that determination, the district court dismissed the plaintiffs' section 1983 claims against the University Officials for failure to state a claim under Rule 12(b)(6) of the Federal Rules of Civil Procedure.  Each plaintiff challenges that action.

The district court then declined to exercise supplemental jurisdiction over the plaintiffs' state law claims and dismissed those claims without prejudice.  No plaintiff appeals that action.

**The Plaintiffs' Issues on Appeal**

6

The plaintiffs' issues on appeal can be summarized as follows: (1) Whether the district court erred by relying on documents outside the complaints to determine the plaintiffs failed to state a claim, and (2) whether the district court erred by dismissing the plaintiffs' claims against the University Officials for failure to state a claim. This Court reviews the district court's dismissal under Rule 12(b)(6) *de novo,* taking the allegations of the complaint to be true. *See Vander Zee v. Reno*, 73 F.3d 1365, 1368 (5th Cir. 1996); *Eason v. Holt*, 73 F.3d 600, 601 (5th Cir. 1996).

## Rule 12(b)(6)

Rule 12(b)(6) authorizes dismissal of a complaint for "failure to state a claim upon which relief can be granted." FED. R. CIV. P. 12(b)(6). The district court can grant a motion to dismiss only if it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim that would entitle him to relief. *See Leffall v. Dallas Indep. Sch. Dist.*, 28 F.3d 521, 524 (5th Cir. 1994). Accordingly, this Court has consistently disfavored dismissal under Rule 12(b)(6). *See Hall v. Thomas*,190 F.3d 693, 696 (5th Cir. 1999); *Mahone v. Addicks Utility Dist. of Harris County*, 836 F.2d 921, 926 (5th Cir. 1988). In determining whether to grant a motion to dismiss, the district court must not go outside the pleadings and must accept all well-pleaded facts as true, viewing those facts most

7

favorably to the plaintiff. *See Scheuer v. Rhodes*, 416 U.S. 232, 236 (1974); *Khurana v. Innovative Health Care Sys., Inc*., 130 F.3d 143, 147 (5th Cir. 1997); *Capital Parks, Inc. v. Southeastern Adver. & Sales Sys., Inc*. 30 F.3d 627, 629 (5th Cir. 1994).

Although the district court may not go outside the complaint, this Court has recognized one limited exception. In *Collins v. Morgan Stanley Dean Witter*, 224 F.3d 496, 498-99 (5th Cir. 2000), this Court approved the district court's consideration of documents attached to a motion to dismiss. In that case, the district court relied on an agreement and an assessment about a potential merger between two companies in determining the contract was not intended to benefit the plaintiffs/stock option holders. *See Collins v. Morgan Stanley Dean Witter*, 60 F. Supp.2d 614 (S.D. Tex. 1999). The fact that the plaintiffs did not object to, or appeal, the district court's consideration of those documents was central to this Court's approval of that practice. *See Collins*, 224 F.3d at 498-99 (5th Cir. 2000). In approving the district court's consideration of the documents attached to the motion to dismiss, this Court restricted such consideration to documents that are referred to in the plaintiff's complaint and are central to the plaintiff's claim. *Id.*

**Whether the District Court Erred By Relying on the Final Report**

8

The district court relied on *Collins* as its authority to consider the Final Report in dismissing the plaintiffs' claims. Like *Collins*, the plaintiffs in the instant case referred to the Final Report in their complaints. But unlike *Collins*, the University Officials did not attach the Final Report to their motion to dismiss. Instead, the University Officials quoted portions of the Final Report in their motions and provided an Internet cite. As a result, the district court had to seek out the report in order to consider it in making the factual determinations that served as the basis of the court's conclusion about deliberate indifference.

The University Officials maintain on appeal that because they provided the Internet citation for the report, and because the report is appropriate for judicial notice under Rule 201 of the Federal Rules of Evidence, the plaintiffs had sufficient notice of the document so that it was not necessary for the University Officials to attach it to their motion to invoke the *Collins* exception. The district court's order, however, does not indicate the court took judicial notice of the report. Even if the district court had taken judicial notice of the report, that action would have been improper because "[a] judicially noticed fact must be one not subject to reasonable dispute in that it is either (1) generally known within the territorial jurisdiction of the trial court or (2) capable of accurate and ready

9

determination by resort to sources whose accuracy cannot reasonably be questioned." FED. R. EVID. 201(b). The Final Report cannot be characterized as generally known within the Southern District of Texas or capable of accurate and ready determination by resort to sources whose accuracy cannot reasonably be questioned. Instead, the Final Report is essentially a defendant-created report that focuses on the causes of the bonfire collapse and thanks at least one of the University Officials for supporting the special commission's efforts to investigate the disaster.

In addition to the Final Report not being attached to the motion, the plaintiffs did not accept the Final Report as true in district court, and complain about the district court's consideration of the Final Report on appeal. Notably, the Scanlan plaintiffs, the Breen plaintiffs, the Kimmel plaintiffs and Plaintiff Bill Davis objected to the Court's reliance on *Collins* in their response to the defendants' motion for summary judgment. These plaintiffs distinguished *Collins* from their case stating,

> *Collins* is unlike the present case in many respects: (1) the Commission Report was not attached to the Motion to Dismiss; (2) the Commission Report refers to , incorporates and includes numerous other documents that have not been presented to the Court or referenced by Plaintiffs; (3) the Commission Report, while insightful, is not central to the Plaintiffs' claims; and (4) the other documents contained on the website referenced in Defendants' Motion are not even mentioned by Plaintiffs in their complaint.

10

Although the plaintiffs rely on the Final Report in their complaints, certainly the report alone is not central to their claims.  Indeed, it is much more central to the University Officials' defenses.  The plaintiffs rely on substantial, other evidence to support their claims.[1]  Consequently, the district court's first error was going outside the plaintiffs' complaints and considering the Final Report.  Even if the Final Report fell under the *Collins* exception, the district court failed to construe the plaintiffs' factual allegations in the light most favorable to the plaintiffs.

**Construing the Allegations in the Plaintiffs' Favor**

Although this Court has never explicitly adopted the state-created danger theory, the Court set out the elements of a state-created danger cause of action in *Johnson v. Dallas Independent School District*, 38 F.3d 198 (5th Cir. 1994).  In *Johnson*, the Court explained that a plaintiff must show the defendants used their authority to create a dangerous environment for the plaintiff and that the defendants acted with deliberate indifference to the plight of the plaintiff.  *See Johnson*, 38 F.3d at 201.  Later, the Court explained what is required to establish deliberate indifference.  In *Piotrowski v. City of*

---

[1]Although the Self plaintiffs and Comstock plaintiffs did not specifically object to the *Collins* exception, those plaintiffs presented substantial summary judgment evidence that placed the district court on notice that they were relying on much more than the Final Report.

11

*Houston*, the Court explained that to establish deliberate indifference, the plaintiff must show the "environment created by the state actors must be dangerous; they must know it is dangerous; and . . . they must have used their authority to create an opportunity that would not otherwise have existed for the third party's crime to occur." *Piotrowski v. City of Houston*, 237 F.3d 567, 585 (5th Cir. 2001)(quoting *Johnson v. Dallas Indep. Sch. Dist.*). Even a cursory review of the complaints shows the plaintiffs pleaded facts to establish deliberate indifference.

The plaintiffs filed a very similar complaint in each of the underlying lawsuits. In the complaints, the plaintiffs discussed how the bonfire grew over the years from a pile of burning trash to a structure weighing over 3 million pounds. The plaintiffs asserted that the defendants were well aware of the dangers posed by the construction of the bonfire stack and that it had been characterized by one of the University Officials as the "most serious risk management activity at the University." The plaintiffs further asserted that:

> The Defendants however, did not use their control to
> see that the Bonfire stack was built in a safe manner.
> Instead, they allowed the Bonfire to grow into a
> massive, complex and dangerous structure. The
> Defendants, through their action and inaction, created
> a terrible peril that clearly could not, and should
> not, have been designated and built solely by students.

The plaintiffs claimed that the University Officials "created

12

this dangerous condition.  They knew it was dangerous.  Despite that, they like ostriches, put their heads in the sand and pretended the peril did not exist."

The plaintiffs explained that the defendant had a vested interest in keeping their heads in the sand and not exercising supervision over the bonfire because they "used the Bonfire experience and tradition as a huge marketing tool to lure prospective students to A&M as well as to secure millions of dollars in donations from alumni."  The plaintiffs went on to claim that the University Officials "actively encouraged and enticed students and alumni to work on the Bonfire stack while they turned a blind eye to the peril."

In stating their section 1983 claims, the plaintiffs included the language "deliberate indifference" to describe a particular University Official's conduct.  Although the plaintiffs relied on the Final Report for their characterization of the danger posed by the bonfire, the introductory paragraph of five of the complaints makes it clear that the plaintiffs rely on more than the Final Report.  In that paragraph, the plaintiffs allege that "despite clear and overwhelming evidence of their culpability, including, *but not limited to*, the independent Bonfire Commission's ("Commission") Report, the Defendants have failed to take or accept any responsibility whatsoever."(emphasis added).

13

If these allegations were construed in the light most favorable to the plaintiff, the district court should have determined the plaintiffs had pleaded sufficient factual allegations to show the bonfire construction environment was dangerous, the University Officials knew it was dangerous, and the University Officials used their authority to create an opportunity for the resulting harm to occur.  As a result, the district court should have concluded that the plaintiffs stated a section 1983 claim under the state-created danger theory.

If the district court was going to consider the Final Report, the court should have converted the motion to dismiss to a motion for summary judgment, given the parties notice, and then considered all of the evidence presented.[2]  *See* FED. R. CIV. P. 12(b)(6).  Had the district court done that, the court would have been faced with the questions of fact the evidence presents.  Indeed, the introductory paragraphs of five complaints clearly

---

[2]Apparently, most of the plaintiffs saw the hand-writing on the wall.  In their responses to the defendants' motions to dismiss, the Scanlan plaintiffs, the Breen plaintiffs, the Kimmel plaintiffs, and Plaintiff Bill Davis objected to the defendants' reliance on the Final Report.  In particular, these plaintiffs asserted that because the defendants were relying on facts and documents not contained within the pleadings, the Court must convert the motion to dismiss to a motion for summary judgment, and asserted that they were entitled to discover evidence central to their claims before the Court ruled on the motion to dismiss.  Although the Self plaintiffs and the Comstock plaintiffs did not make this particular objection, they presented substantial summary judgment evidence that placed the district court on notice that plaintiffs were relying on much more than the Final Report.

indicate the plaintiffs are relying on more than the Final Report as evidence for their claims.

By simply adopting the Final Report as the basis for determining the University Officials did not act with deliberate indifference, the district court deferred to a defendant-created commission rather than presenting the questions of material fact to a trier of fact. Whether deliberately delegating the construction of the bonfire stack to students the University Officials allegedly knew were not qualified to handle such a dangerous project, and whether deliberately providing no supervision to students in building the bonfire even though they knew the students were not qualified to build the stack, constituted deliberate indifference presents fundamental questions of material fact. Oddly, the district court acknowledged in a footnote that the existence of deliberate indifference is often a factual determination, but stated

> because the Final Report affirmatively discloses that the University Officials in this case lacked the requisite culpability with respect to the alleged violation of the Bonfire victims' constitutional rights, it is not only appropriate, but mandatory in this instance to conclude that the University Officials failed to act with deliberate indifference, as a matter of law.

Although the district court stated in its orders that "the Parties have accepted the Final Report," most of the plaintiffs objected to the district court's reliance on the Final Report in their responses to the defendants' motions for summary judgment.

15

In particular, the Scanlan plaintiffs, the Breen plaintiffs, the Kimmel plaintiffs, the Self plaintiffs, and Plaintiff Bill Davis complained:

> The Defendants assert that the Plaintiffs have accepted the Commission's final [sic] Report and findings. (State's Brief, p. 2.) That statement is untrue and the Defendants have cited no support for that position. The Plaintiffs, however, are entitled to rely on portions of the Report as admissions by the Defendants as it is essentially an A&M report and has been adopted by the Defendants.

Certainly, reasonable minds could differ about the Final Report's conclusions about the University Officials' roles in the collapse of the bonfire stack. If *all* of the summary judgment evidence presents genuine issues of material fact, those roles should be decided by a trier of fact, not the defendants themselves. Consequently, the district court erred because it went outside the complaints and did not construe the plaintiffs' allegations in favor of the plaintiffs.

## Conclusion

Because the district court erred in dismissing the plaintiffs' claims against the University Officials, the Court REVERSES the district court's judgments and REMANDS the cases to the district court for further proceedings consistent with this opinion.

REVERSED and REMANDED.