United States Court of Appeals
Fifth Circuit

**F I L E D**

April 24, 2007

Charles R. Fulbruge III
Clerk

**UNITED STATES COURT OF APPEALS**
**For the Fifth Circuit**

No. 04-40712

SEAN BREEN, as Administrator of the Estate of Christopher
Breen; CHRISTOPHER BREEN; JOHN E. BREEN; MARIAN K. BREEN,

Plaintiffs-Appellants,

VERSUS

TEXAS A&M UNIVERSITY; ET AL.,

Defendants,

TEXAS A&M UNIVERSITY; J. MALON SOUTHERLAND, in his
individual capacity; RUSSELL THOMPSON, in his individual
capacity; RAY BOWEN,

Defendants-Appellees.

Consolidated with

No. 04-40713

JAMES KIMMEL, as representative of the Estate of Lucas
Kimmel (deceased); JAMES KIMMEL; WALIETA KIMMEL,

Plaintiffs-Appellants,

VERSUS

TEXAS A&M UNIVERSITY; ET AL.,

Defendants,

TEXAS A&M UNIVERSITY; J. MALON SOUTHERLAND, in his
individual capacity; RUSSELL J. THOMPSON, in his official
capacity; RAY BOWEN, in his individual capacity; WILLIAM L.
KIBLER, in his individual capacity; JOHN J. KOLDUS, III, in
his individual capacity,

Defendants-Appellees.

Consolidated with
04-40714

BILL DAVIS,

                              Plaintiff-Appellant,

                         VERSUS

TEXAS A&M UNIVERSITY; ET AL.,
                                        Defendants,


TEXAS A&M UNIVERSITY; J. MALON SOUTHERLAND, in his
individual capacity; RUSSELL THOMPSON, in his individual
capacity; RAY BOWEN, in his individual capacity; WILLIAM L.
KIBLER, in his individual capacity; JOHN J. KOLDUS, III, in
his individual capacity,
                              Defendants-Appellees.
                 _____
                         Consolidated with
                            04-40715

HOWARD SCANLAN; DENISE SCANLAN; LAUREN N. T. SCANLAN,
                              Plaintiffs-Appellants,

                         VERSUS

TEXAS A&M UNIVERSITY; ET AL.,
                                        Defendants,

TEXAS A&M UNIVERSITY; J. MALON SOUTHERLAND, in his
individual capacity; RUSSELL THOMPSON, in his individual
capacity; RAY BOWEN, in his individual capacity; WILLIAM L.
KIBLER, in his individual capacity; JOHN J. KOLDUS, II, in
his individual capacity,
                              Defendants-Appellees.
                 _____
                         Consolidated with
                            04-40780

JOHN ANDREW COMSTOCK; DIXIE ANN ZINNEKER,
                              Plaintiffs-Appellants,

                         VERSUS

TEXAS A&M UNIVERSITY; ET AL.,
                                        Defendants,

TEXAS A&M UNIVERSITY; J. MALON SOUTHERLAND, in his
individual capacity; RUSSELL THOMPSON, in his individual

capacity; RAY BOWEN; WILLIAM L. KIBLER, in his individual capacity; JOHN J. KOLDUS, III, in his individual capacity,

                                        Defendants-Appellees.

---

Consolidated with
04-40812

JAQUELYNN KAY SELF, Individually and as Administratrix of the estate of Jerry Don Self, Deceased; KATHY MCCLAIN ESCAMILLA, Individually and as Administratrix of the Estate of Bryan A. McClain, Deceased; PHILLIP MCCLAIN, ANDREA HEARD, Individually and as Administratrix of the Estate of Christopher Lee Heard, Deceased; LESLIE G. HEARD; GREGORY ANTHONY POWELL, Individually and as Administrator of the Estate of Chad A. Powell, Deceased; BEVERLY JILL POWELL; MATTHEW LYNN ROBBINS; DOMINIC M. V. BRAUS; NANCY BRAUS,

                                        Plaintiffs-Appellants,

VERSUS

RAY M. BOWEN; J. MALON SOUTHERLAND; WILLIAM KIBLER; RUSSELL W. THOMPSON; JOHN J. KOLDUS, III; M. T. HOPGOOD, JR., Major General; DONALD J. JOHNSON; ZACK COAPLAND; KEVIN JACKSON; JAMES R. REYNOLDS; ROBERT HARRY STITELER, JR.; MICHAEL DAVID KRENZ,

                                        Defendants-Appellees.

---

Appeals from the United States District Court
For the Southern District of Texas

---

Before HIGGINBOTHAM, WIENER, and DENNIS, Circuit Judges.

DENNIS, Circuit Judge:

These consolidated appeals arise out of the violent collapse of the Texas A&M University bonfire stack on November 18, 1999, which killed 12 students and injured 27 others.  In

1

these appeals, plaintiffs seek to overturn the district court's grant of summary judgment under Federal Rule of Civil Procedure 56 dismissing their 42 U.S.C. § 1983 claims against University officials for damages resulting from that tragic event. In previous appeals, a panel of this court, in Scanlan v. Texas A&M University, 343 F.3d 533 (5th Cir. 2003), reversed the district court's dismissal of those claims under Rule 12(b)(6). Upon remand after that decision, the district court granted summary judgment in favor of defendants, holding that the University officials were entitled to qualified immunity from suit. See Breen v. Southerland, No. 3:01-CV-00670, slip op. (S.D. Tex. May 21, 2004). This second group of appeals followed.

## I. Procedural Background

In the wake of the 1999 Texas A&M bonfire collapse, the plaintiffs, including the estates of deceased victims, injured survivors, and relatives of affected students, filed suits against Texas A&M University and certain University officials in the United States District Court for the Southern District of Texas.[1] Plaintiffs asserted, inter alia, that the University

---

[1]The defendants in the cases on appeal before us are Dr. Ray Bowen, Dr. Zack Coapland, Major General Marvin Hopgood, Jr., Dr. Kevin Jackson, Brigadier General Donald Johnson, Dr. William

and its officials were liable to plaintiffs under 42 U.S.C. § 1983 for violating the students' substantive due process rights to bodily integrity.  Plaintiffs' section 1983 claims were predicated on a state-created danger theory—i.e., that the University and its officials created a dangerous environment for students and were deliberately indifferent to their safety by encouraging the unqualified and inexperienced students to build the enormous bonfire stack without adequate supervision by University personnel.  Plaintiffs also asserted several state law causes of action against the various defendants.

Defendants moved to dismiss plaintiffs' actions for failure to state a claim, and, in the alternative, for summary judgment.  For reasons assigned in an opinion dated July 23, 2002, the district court granted the defendants' motions to dismiss and dismissed plaintiffs' complaints in their entirety.  See Kimmel v. Texas A&M Univ., 267 F. Supp. 2d 646 (S.D. Tex. 2002).  First, the district court held that plaintiffs' claims against Texas A&M University were suits against the state and were therefore barred by sovereign immunity.  Id. at 653-54. No appeal was taken from that holding.  Second, as to

Kibler, Dr. John Koldus, III, Michael Krenz, James Reynolds, Dr. J. Malon Southerland, Robert Stiteler, Jr., and Russell Thompson.

3

plaintiffs' section 1983 claims against the University officials, the district court held that plaintiffs failed to state a cognizable substantive due process claim because plaintiffs' allegations were insufficient to establish that the officials acted with deliberate indifference. Id. at 656-58. In analyzing the sufficiency of plaintiffs' section 1983 claims, the district court considered not only the allegations of plaintiffs' complaints, but also the findings of the Final Report of the Special Commission on the 1999 Texas A&M Bonfire,[2] although that document was not incorporated by or otherwise made part of plaintiffs' complaints. Kimmel, 267 F. Supp. 2d at 654. Finally, the district court declined to exercise supplemental jurisdiction over plaintiffs' state law claims and dismissed them without prejudice. Id. at 658-59.

Upon plaintiffs' first appeal in this case, a panel of this court reversed the district court's Rule 12(b)(6) dismissal of plaintiffs' section 1983 claims against the University officials. Scanlan, 343 F.3d at 537-39. The court first held that the district court erred by considering, for

---

[2]The Final Report documented the findings of a special commission convened by the president of the University to investigate the collapse of the bonfire stack. See Scanlan, 343 F.3d at 535.

4

purposes of the defendants' Rule 12(b)(6) motions to dismiss, the facts stated in the Final Report.[3] The <u>Scanlan</u> court then considered whether the plaintiffs' allegations were sufficient to state a claim under 42 U.S.C. § 1983. The court noted that, although this circuit had never adopted the state-created danger theory, it had previously recognized that a plaintiff seeking to recover under such a theory must show that (1) "the defendants used their authority to create a dangerous environment for the plaintiff;" and (2) "the defendants acted with deliberate indifference to the plight of the plaintiff." <u>Id.</u> at 537-38. The court found that, construing the allegations in the light most favorable to the plaintiffs, the complaints stated a cause of action under the state-created danger theory because they averred that: (1) the bonfire construction environment was dangerous; (2) the University officials knew that it was dangerous and would create an opportunity for the resulting harm to occur; and (3) the officials were deliberately indifferent to the students' safety

---

[3]The court held that the district court erred in considering the facts stated in the Final Report because the Final Report was not attached to the defendants' motions to dismiss, the plaintiffs objected to its being considered, it was not central to plaintiffs' claims, and the plaintiffs relied on other evidence in support of their claims. <u>Scanlan</u>, 343 F.3d at 536-37.

5

because they delegated the construction of the bonfire stack to students, whom they knew were not qualified to handle such a dangerous project, failed to provide adequate supervision, and ignored the danger that the stack posed to the students working on it.  Id. at 538.  Accordingly, the Scanlan court reversed the district court's judgment dismissing the plaintiffs' section 1983 claims and remanded the case to the district court for further proceedings.

On remand, the University officials renewed their motions for summary judgment.  The district court granted the motions on the ground that the officials were entitled to qualified immunity from suit.  See Breen, No. 3:01-cv-00670, slip op. at 3-11.  The district court found that, although the summary judgment record contained material factual disputes concerning both whether defendants' conduct created or increased the danger to the students involved in construction of the bonfire stack and whether defendants acted with deliberate indifference, the defendants were nevertheless entitled to qualified immunity because their conduct was not objectively unreasonable in light of clearly established Fifth Circuit law at the time of their actions.  Id., slip op. at 6-11.

6

## II. Standard of Review

Summary judgment is proper where there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). This court reviews a grant of summary judgment <u>de novo</u>, applying the same standards as those applicable in the district court. <u>Baton Rouge Oil & Chem. Workers Union v. Exxon Mobil Corp.</u>, 289 F.3d 373, 376 (5th Cir. 2002). Ordinarily, on summary judgment, the moving party has the initial burden of establishing that there are no issues of material fact and that it is entitled to judgment in its favor as a matter of law. <u>See</u> <u>Rivera v. Houston Indep. Sch. Dist.</u>, 349 F.3d 244, 246-47 (5th Cir. 2003). If the moving party meets this burden, the burden then shifts to the non-moving party to point to evidence showing that an issue of material fact exists. <u>Id.</u> at 247. When a defendant invokes qualified immunity, however, the burden shifts to the plaintiff to rebut the applicability of the defense. <u>See</u> <u>McClendon v. City of Columbia</u>, 305 F.3d 314, 323 (5th Cir. 2002) (en banc) (citing <u>Bazan ex rel. Bazan v. Hidalgo County</u>, 246 F.3d 481, 489 (5th Cir. 2001)). In determining whether summary judgment is appropriate, we view all of the evidence in the light most favorable to the non-

7

moving party and draw all reasonable inferences in its favor.

See Coleman v. Sch. Bd. of Richland Parish, 418 F.3d 511, 515–16 (5th Cir. 2005).

### III. Section 1983 and Qualified Immunity

Section 1983 provides a private right of action for damages to individuals who are deprived of "any rights, privileges, or immunities" protected by the Constitution or federal law by any person acting under the color of state law. 42 U.S.C. § 1983. Notwithstanding section 1983's broad language, state officials performing discretionary functions are often protected from liability by the doctrine of qualified immunity, which shields such officials from suit "'insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'" McClendon, 305 F.3d at 322 (quoting Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982)). To determine whether an official is entitled to qualified immunity from a suit alleging a constitutional violation, we conduct a familiar two-step inquiry. First, we must ask whether the plaintiff has alleged facts to establish that the official violated the plaintiff's constitutional rights. Hope v. Pelzer, 536 U.S. 730, 736 (2002) ("The threshold inquiry a court must undertake

8

in a qualified immunity analysis is whether plaintiff's allegations, if true, establish a constitutional violation."); Saucier v. Katz, 533 U.S. 194, 201 (2001) ("A court required to rule upon the qualified immunity issue must consider, then, this threshold question: Taken in the light most favorable to the party asserting the injury, do the facts alleged show the officer's conduct violated a constitutional right?"). Whether the facts establish a violation of a constitutional right is determined with reference to current law. See Atteberry v. Nocona Gen. Hosp., 430 F.3d 245, 253 (5th Cir. 2005); McClendon, 305 F.3d at 323. If the facts do not establish that the defendant violated the plaintiff's constitutional rights, we need not inquire further. See Saucier, 533 U.S. at 201. If they do, the defendant is still entitled to qualified immunity unless the court finds that the defendant's conduct was objectively unreasonable in light of clearly established law at the time of the state actions at issue. See McClendon, 305 F.3d at 323.

## A. Violation of a Constitutional Right

Plaintiffs here assert that defendants violated the students' rights to bodily integrity under the substantive component of the Fourteenth Amendment's Due Process Clause by

9

creating or exacerbating the dangerous situation that ultimately injured the students. Specifically, plaintiffs assert that defendants knew that building the bonfire stack, a recognized and sanctioned University activity, was a dangerous activity and that the student leaders were not qualified to design and supervise its construction. Plaintiffs allege that, notwithstanding that knowledge, defendants deliberately delegated the design and construction process to the students and deliberately decided not to provide the students with or require that they have adequate supervision. Plaintiffs argue that defendants' actions give rise to a cognizable substantive due process claim under the state-created danger theory.

    1.  <u>Substantive Due Process and State-Created Danger</u>

The Due Process Clause of the Fourteenth Amendment provides that "[n]o State shall . . . deprive any person of life, liberty, or property, without due process of law." U.S. Const. amend. XIV, § 1. The Supreme Court has long recognized that the Due Process Clause is more than a guarantee of procedural fairness and "cover[s] a substantive sphere as well, 'barring certain government actions regardless of the fairness of the procedures used to implement them.'" <u>County of</u>

10

Sacramento v. Lewis, 523 U.S. 833, 840 (1998) (quoting Daniels v. Williams, 474 U.S. 327, 331 (1986)). The reach of substantive due process is limited, however, and it protects against only the most serious of governmental wrongs. The Court has emphasized that "because guideposts for responsible decisionmaking in this uncharted area are scarce and open-ended," courts should be "reluctant to expand the concept of substantive due process." Collins v. City of Harker Heights, 503 U.S. 115, 125 (1992).

When a plaintiff complains of abusive executive action, substantive due process is violated "only when [the conduct] 'can properly be characterized as arbitrary, or conscience shocking, in a constitutional sense.'" Lewis, 523 U.S. at 847 (quoting Collins, 503 U.S. at 128). Though the meaning of the term "conscience shocking" is necessarily indeterminate, the Lewis court provided some guidance for lower courts to follow. Negligent acts, for example, are insufficient to trigger a substantive due process violation. Id. at 849 ("[L]iability for negligently inflicted harm is categorically beneath the threshold of constitutional due process."). Conversely, conduct intended to cause injury is, of course, most likely to violate due process. Id. For conduct within the "middle

11

range" of "something more than negligence but 'less than intentional conduct, such as recklessness or 'gross negligence,''" the inquiry is more difficult and requires a searching inquiry into the facts and circumstances of the particular case in light of the right asserted. Id. at 849-50 (quoting Daniels, 474 U.S. at 331); see also id. at 850 ("Deliberate indifference that shocks in one environment may not be so patently egregious in another.").

While it is clear that individuals have a substantive due process right to be free from state-occasioned bodily harm, it is equally clear that the Constitution does not, as a general matter, impose upon state officials a duty of care to protect individuals from any and all private harms. DeShaney v. Winnebago County Dep't of Soc. Servs., 489 U.S. 189, 196-97 (1989) ("As a general matter, then, we conclude that a State's failure to protect an individual against private violence simply does not constitute a violation of the Due Process Clause."). The DeShaney court recognized two possible exceptions to this general rule, however. First, the Court stated that the Constitution imposes upon the state a duty of care towards individuals who are in the custody of the state. Id. at 200 ("[W]hen the State takes a person into its custody

12

and holds him there against his will, the Constitution imposes upon it a corresponding duty to assume some responsibility for his safety and well-being."). Second, some language from DeShaney has been read to suggest that state officials also have a duty to protect individuals from harm when their actions created or exacerbated a danger to the individual. See id. at 201 (noting that, although the state may have been aware of the dangers faced by the plaintiff, "it played no part in their creation, nor did it do anything to render him more vulnerable to them").

This latter exception mentioned in DeShaney is often recognized as the primary source[4] for what has been termed the state-created danger theory. A number of courts, including the majority of the federal circuits, have adopted the state-created danger theory of section 1983 liability in one form or another.[5] Prior to the Scanlan decision in the present group

---

[4]But cf. Kennedy v. City of Ridgefield, 439 F.3d 1055, 1061 n.1 (9th Cir. 2006) (asserting that "the 'state-created danger' doctrine predates DeShaney" and that DeShaney is "more reasonably understood as an acknowledgment and preservation of the doctrine, rather than its source").

[5]See, e.g., Butera v. District of Columbia, 235 F.3d 637, 651 (D.C. Cir. 2001) (holding that "under the State endangerment concept, an individual can assert a substantive due process right to protection by the District of Columbia from third-party violence when . . . officials affirmatively act to increase or create the danger that ultimately results in the individual's harm");

13

of cases, this court had often expressed reluctance to embrace

the state-created danger theory, while noting its adoption by

other courts.  Although this court discussed the theory in no

_____

Kallstrom v. City of Columbus, 136 F.3d 1055, 1066-67 (6th Cir. 1998) (recognizing state-created danger claim where officials released personal information about undercover officers to the suspects whom the officers were investigating); Kneipp v. Tedder, 95 F.3d 1199, 1211 (3d Cir. 1996) ("[W]e hold that the state-created danger theory is a viable mechanism for establishing a constitutional claim under 42 U.S.C. § 1983."); Uhlrig v. Harder, 64 F.3d 567, 572 (10th Cir. 1995) (stating that "danger creation" theory is a recognized exception to DeShaney rule); Reed v. Gardner, 986 F.2d 1122, 1127 (7th Cir. 1993) (holding that "officers may be subject to suit under section 1983 if they knowingly and affirmatively create a dangerous situation for the public and fail to take reasonable preventative steps to diffuse that danger"); Dwares v. City of New York, 985 F.2d 94, 98-99 (2d Cir. 1993) (recognizing state-created danger claim where police officers allegedly conspired with group of "skinheads" to permit them to assault demonstrators); Freeman v. Ferguson, 911 F.2d 52, 54-55 (8th Cir. 1990) (recognizing state-created danger claim where police chief allegedly directed officers to ignore victim's pleas for assistance); Wood v. Ostrander, 879 F.2d 583, 589-90 (9th Cir. 1989) (recognizing state-created danger claim where police officers impounded vehicle, arrested driver, and left passenger stranded on roadside in high crime area).

The First and Fourth Circuits have discussed the state-created danger theory, but those courts have neither accepted nor rejected it as a theory of recovery.  See Velez-Dias v. Vega-Irizarry, 421 F.3d 71, 80 (1st Cir. 2005) ("'This court has, to date, discussed the state created danger theory, but never found it actionable on the facts alleged.'") (quoting Rivera v. Rhode Island, 402 F.3d 27, 35 (1st Cir. 2005)); Pinder v. Johnson, 54 F.3d 1169, 1175-76 (4th Cir. 1995) (en banc).  The Eleventh Circuit at one point recognized the state-created danger theory, see Cornelius v. Town of Highland Lake, 880 F.2d 348, 354-55 (11th Cir. 1989), but it appears to have since repudiated the doctrine.  See White v. Lemacks, 183 F.3d 1253, 1259 (11th Cir. 1999) ("[T]he 'special relationship' and 'special danger' doctrines applied in our decision in Cornelius are no longer good law, having been superseded by the standard employed by the Supreme Court in Collins.").

14

fewer than 11 published decisions prior to <u>Scanlan</u>,[6] it had not formally approved of the theory or applied it to uphold a plaintiff's complaint against pretrial motions or affirm an award of damages. <u>See, e.g.</u>, <u>Morin</u>, 309 F.3d at 321 (noting that Fifth Circuit had "neither adopted nor rejected the state created danger theory"); <u>McKinney</u>, 309 F.3d at 313 (same). This court had, however, recognized and described the essential elements of such a claim for the purpose of demonstrating that the plaintiffs' complaints in particular cases failed to state claims under the theory. In doing so, this court explained that to recover on a state-created danger claim, the plaintiff must show that the harm to the plaintiff resulted because (1) the defendant's actions created or increased the danger to the plaintiff; and (2) the defendant acted with deliberate indifference toward the plaintiff. <u>See, e.g.</u>, <u>Morin</u>, 309 F.3d at 321-22; <u>McKinney</u>, 309 F.3d at 313. This court had also

---

[6]<u>See</u> <u>Morin v. Moore</u>, 309 F.3d 316, 321-24 (5th Cir. 2002); <u>McKinney v. Irving Indep. Sch. Dist.</u>, 309 F.3d 308, 313-14 (5th Cir. 2002); <u>McClendon</u>, 305 F.3d at 324-26; <u>Piotrowski v. City of Houston</u>, 237 F.3d 567, 583-85 (5th Cir. 2001) ("<u>Piotrowski II</u>"); <u>Saenz v. Heldenfels Bros., Inc.</u>, 183 F.3d 389, 391-92 (5th Cir. 1999); <u>Randolph v. Cervantes</u>, 130 F.3d 727, 731 (5th Cir. 1997); <u>Doe v. Hillsboro Indep. Sch. Dist.</u>, 113 F.3d 1412, 1415 (5th Cir. 1997) (en banc); <u>Piotrowski v. City of Houston</u>, 51 F.3d 512, 517 (5th Cir. 1995) ("<u>Piotrowski I</u>"); <u>Johnson v. Dallas Indep. Sch. Dist.</u>, 38 F.3d 198, 200-02 (5th Cir. 1994); <u>Leffall v. Dallas Indep. Sch. Dist.</u>, 28 F.3d 521, 530-32 (5th Cir. 1994); <u>Salas v. Carpenter</u>, 980 F.2d 299, 309-10 (5th Cir. 1992).

15

stated that the state-created danger theory requires an identifiable victim.  See Morin, 309 F.3d at 322-23; Saenz, 183 F.3d at 392.

 2.  Scanlan's Recognition of the State-Created Danger Theory

In most of the cases in which panels of this court had discussed the state-created danger theory, the panel, in effect, pretermitted whether to embrace or reject the theory, but held simply that the facts of the particular case were insufficient to state a claim under such a theory because the plaintiff did not adequately allege that the defendants created the danger,[7] that the defendants acted with the requisite culpability,[8] that the plaintiff was an identifiable victim,[9] or some combination thereof.  In Scanlan, however, the panel reversed the district court's dismissal of plaintiffs' section 1983 claims in the present group of cases on the ground that plaintiffs had sufficiently alleged all of the elements of a state-created danger claim.  See Scanlan, 343 F.3d at 537–39.

Given that disposition, the question naturally arises

---

[7]See Morin, 309 F.3d at 324; McKinney, 309 F.3d at 314; Piotrowski II, 237 F.3d at 584-85; Johnson, 38 F.3d at 202; Salas, 980 F.2d at 309.

[8]See McClendon, 305 F.3d at 326; Piotrowski II, 237 F.3d at 585; Johnson, 38 F.3d at 201-02; Leffall, 28 F.3d at 531.

[9]See Morin, 309 F.3d at 322-23; Saenz, 183 F.3d at 391-92.

16

whether <u>Scanlan</u> constitutes recognition, approval, and adoption for use by this court of the state-created danger theory. Although the <u>Scanlan</u> opinion did not expressly announce that it was adopting the state-created danger theory, it explicitly recited the previously recognized essential elements of a state-created danger claim, applied them to the pleadings, and decided that the plaintiffs had stated a claim upon which relief could be granted under the theory. <u>See</u> <u>id.</u> Unlike the earlier cases discussed above, in which this court declined to pass upon the validity of the state-created danger theory because the plaintiff's allegations did not establish the necessary elements of such a claim, the <u>Scanlan</u> court explicitly found that plaintiffs had alleged facts sufficient to show both (1) that the defendants created or increased the danger to the students; and (2) that the defendants acted with deliberate indifference. <u>See</u> <u>id.</u> at 538 ("[T]he district court should have determined [that] the plaintiffs had pleaded sufficient factual allegations to show the bonfire construction environment was dangerous, the University Officials knew it was dangerous, and the University Officials used their authority

to create an opportunity for the resulting harm to occur.").[10]

Thus, the Scanlan panel, unlike earlier panels of this court, was squarely faced with complaints that sufficiently alleged the elements of a state-created danger claim, and, therefore, stated claims under that theory. Consequently, the Scanlan court, by holding that the district court erred in dismissing plaintiffs' section 1983 claims, necessarily recognized that the state-created danger theory is a valid legal theory. Were that not the case, the Scanlan court would have been required to affirm the district court's dismissal of plaintiffs' complaints, notwithstanding the fact that they sufficiently alleged the elements of a state-created danger claim. Under Rule 12(b)(6), federal courts are required to dismiss claims based upon invalid legal theories even though they might otherwise be well-pleaded.[11]

---

[10]The Scanlan opinion does not discuss the additional requirement that the risk of harm be to an identifiable victim, probably because defendants did not argue that the affected students were not identifiable victims. Defendants do not argue that plaintiffs have failed to establish that requirement in these appeals.

[11]As the Supreme Court stated in Neitzke v. Williams, 490 U.S. 319 (1989), Rule 12(b)(6) requires dismissal whenever a plaintiff's claim is based on an invalid legal theory:

> Nothing in Rule 12(b)(6) confines its sweep to claims of law which are obviously insupportable. On the contrary, if as a matter

18

Since the <u>Scanlan</u> decision, the panels in three subsequent, unrelated cases have issued opinions that contained statements suggesting that <u>Scanlan</u> did not adopt the state-created danger theory. See <u>Rios v. City of Del Rio</u>, 444 F.3d 417, 422-23 (5th Cir. 2006) (suggesting that <u>Scanlan</u> did not adopt state-created danger theory because "<u>nowhere</u> in the opinion does the court expressly purport to approve that theory"); <u>Beltran v. City of El Paso</u>, 367 F.3d 299, 307 (5th Cir. 2004) (citing <u>Scanlan</u> for the proposition that "[t]his court has consistently refused to recognize a 'state-created danger' theory of § 1983 liability even where the question of the theory's viability has been squarely presented"); <u>Rivera v. Houston Indep. Sch. Dist.</u>, 349 F.3d 244, 249 n.5 (5th Cir. 2003) (noting of <u>Scanlan</u> that "[d]espite remanding that case to the district court for further proceedings, we did not recognize the state created danger theory"). In each of those cases, however, as in so many of this court's other

> of law "it is clear that no relief could be granted under any set of facts that could be proved consistent with the allegations," . . . a claim must be dismissed, without regard to whether it is based on an outlandish legal theory or on a close but ultimately unavailing one.

<u>Id.</u> at 327 (internal citations omitted).

19

state-created danger cases, the court found that, assuming, arguendo, the validity of the state-created danger theory, the plaintiff's allegations did not establish the elements of such a claim. See Rios, 444 F.3d at 423-25; Beltran, 367 F.3d at 307-08; Rivera, 349 F.3d at 249-50. Thus, nothing in those cases turned on whether the state-created danger theory is or is not valid in this circuit. Accordingly, the statements in those cases pertaining to Scanlan were unnecessary to their holdings and, as such, constituted only non-binding dicta.[12]

The Scanlan panel's clearly implied recognition of state-created danger as a valid legal theory applicable to the case is the law of the case with respect to these further appeals in these same cases now before this panel. Under the law of the case doctrine, the factual findings and legal conclusions

---

[12]As Judge Posner noted, there are numerous and sometimes inconsistent definitions of dictum, but as a practical matter, a court can determine whether a particular passage in an earlier opinion is dictum by considering factors such as whether "the passage was unnecessary to the outcome of the earlier case and therefore perhaps not as fully considered as it would have been were it essential to the outcome," or whether "the passage was not an integral part of the earlier opinion, and so it was a redundant part of that opinion and, again, may not have been fully considered." United States v. Crawley, 837 F.2d 291, 292 (7th Cir. 1988). Under either of these formulations, the statements from Rios, Beltran, and Rivera suggesting that Scanlan does not represent an acceptance of the state-created danger theory, which, as noted above, were unnecessary to the outcome or analysis in those cases, clearly qualify as dicta.

of a panel of this court continue to govern throughout that case; we will not ordinarily revisit those findings or conclusions on subsequent appeals. See Free v. Abbott Labs., Inc., 164 F.3d 270, 272 (5th Cir. 1999). The doctrine "applies not only to issues decided explicitly, but also to everything decided 'by necessary implication.'" Office of Thrift Supervision v. Felt (In re Felt), 255 F.3d 220, 225 (5th Cir. 2001) (citing Browning v. Navarro, 887 F.2d 553, 556 (5th Cir. 1989)). Although the law of the case does not absolutely bind later panels, we will generally apply it unless (1) the evidence is materially different on the later appeal; (2) there has been a change in controlling law on the applicable issues; or (3) the initial decision was clearly erroneous and adhering to it would result in manifest injustice. Free, 164 F.3d at 272.

Because the necessary implication of the Scanlan court's decision is that the state-created danger theory is, indeed, a valid basis for a claim on the set of facts alleged in the complaints in these cases, that clear implied holding is the law of the case in the present group of appeals. Moreover, as none of the exceptions to the law of the case doctrine even arguably applies here, this panel cannot justifiably revisit

21

that conclusion.

### 3. Did the University Officials' Conduct Violate the Students' Substantive Due Process Rights in this Case?

Because <u>Scanlan</u> established that plaintiffs have a substantive due process right to be free from bodily injuries caused by state-created dangers on the facts alleged in plaintiffs' complaints, we next must determine whether, viewing the summary judgment evidence in the light most favorable to plaintiffs, there is an issue of material fact as to whether the defendants' conduct violated that right. <u>See</u> <u>Porter v. Ascension Parish Sch. Bd.</u>, 393 F.3d 608, 613 (5th Cir. 2004) ("When reviewing a grant of summary judgment based on qualified immunity, we must first determine whether a plaintiff successfully alleged facts showing the violation of a constitutional right by state officials, and whether there is a genuine issue of material fact that the violation occurred."). The district court held that issues of fact precluding summary judgment existed on both prongs of plaintiffs' state-created danger claims. As to the first prong—that defendants created or increased the danger to the plaintiffs—the district court found as follows:

> Plaintiffs ultimately allege that the
> University Officials increased the danger

22

to the victims by affirmatively delegating technical and complex Bonfire responsibilities to unqualified students without adequate supervision or guidelines. Defendants maintain that they "passively continued the status quo" and merely permitted students to do what they wanted. The resolution of these polar viewpoints requires examination of literally hundreds of facts. It would be inappropriate and virtually impossible for the Court to decide as a matter of law and based on the record now before the court whether the state actors increased the danger to the Bonfire victims.

Breen, No. 3:01-cv-00670, slip op. at 6-7. With respect to deliberate indifference, the district court took its guidance from Scanlan:

In its Opinion in this case, the Fifth Circuit stated: "Whether deliberately delegating the construction of the bonfire stack to students the University Officials allegedly knew were not qualified to handle such a dangerous project, and whether deliberately providing no supervision to students building the bonfire even though they knew the students were not qualified to build the stack, constituted deliberate indifference presents fundamental questions of material fact." Scanlan, 343 F.3d at 539. Though this statement was made in an opinion disposing of Defendants' Motion to Dismiss, the summary judgment evidence submitted since then has only muddied the waters further. At this stage in the proceedings, there remain multiple questions of fact as to whether Defendants acted with deliberate indifference.

23

<u>Id.</u>, slip op. at 8.

We agree with the district court that <u>Scanlan</u> essentially disposes of this first prong of the qualified immunity inquiry. <u>Scanlan</u> quite clearly held that plaintiffs' allegations, if proven, would state a section 1983 claim under the state-created danger theory. <u>Scanlan</u>, 343 F.3d at 539. The <u>Scanlan</u> court also, however, went on to state that the conflicting summary judgment evidence submitted by the parties in the district court presented material fact issues concerning plaintiffs' state-created danger claims. <u>See</u> <u>id.</u> ("Had the district court [converted the motion to dismiss into a motion for summary judgment], the court would have been faced with the questions of fact the evidence presents."); <u>id.</u> (noting existence of "fundamental questions of material fact"); <u>id.</u> ("If <u>all</u> of the summary judgment evidence presents genuine issues of material fact, those roles should be decided by a trier of fact, not the defendants themselves."). The <u>Scanlan</u> court's statements about the summary judgment evidence are technically dicta and thus not the law of the case, but its view of the summary judgment evidence in the record at the time of its decision is nevertheless instructive. Although the parties supplemented the summary judgment record with some

24

additional evidence on remand, as the district court noted, the material factual disputes identified in Scanlan remain concerning both whether defendants' actions increased the danger to the students and whether defendants acted with deliberate indifference.  We therefore conclude that plaintiffs successfully alleged facts showing the violation of a constitutional right by state officials under the state-created danger theory, and that there is a genuine issue of material fact that the violation occurred.

## B. Clearly Established Law

Defendants in section 1983 cases are nevertheless entitled to qualified immunity from a plaintiff's claims unless their conduct was objectively unreasonable in light of the clearly established law at the time of their actions.  McClendon, 305 F.3d at 323.  The district court granted defendants' motions for summary judgment because it found that the state-created danger theory was not clearly established law in the Fifth Circuit as of November 18, 1999, the date on which the bonfire stack collapsed.

Whether a right is clearly established depends, to a large extent, on the level of generality at which the right in question is defined.  McClendon, 305 F.3d at 330-31.  In the

25

qualified immunity context, a constitutional right is clearly established only if, at the time of an official's challenged conduct, the contours of the right in question are "'sufficiently clear that a reasonable official would understand that what he is doing violates that right.'" Hope, 536 U.S. at 739 (quoting Anderson v. Creighton, 483 U.S. 635, 640 (1987)). The essence of the clearly established law requirement is that a defendant is entitled to "fair notice" that his conduct violates the plaintiff's constitutional rights. See id. at 739-40. Thus, although the relevant right must be defined with sufficient specificity to provide the official with notice of the unlawfulness of his conduct, "the term clearly established does not necessarily refer to commanding precedent that is factually on all-fours with the case at bar, or that holds the very action in question unlawful." Atteberry, 430 F.3d at 256-57 (internal citations and quotation marks omitted).

In determining whether a right is clearly established, we are not limited to precedent from the Supreme Court or this court. As we have recognized, a right can become clearly established either through cases that constitute binding authority or on the basis of a consensus of persuasive cases

26

from other jurisdictions. See <u>McClendon</u>, 305 F.3d at 329 ("In light of <u>Wilson</u> [<u>v. Layne</u>, 526 U.S. 603 (1999)], we must consider both this court's treatment of the state-created danger theory and the status of this theory in our sister circuits . . . .").

The starting point for our consideration of whether the state-created danger theory was clearly established in a particularized sense relevant here on or before November 18, 1999, the date of the bonfire stack's collapse, is our 2002 en banc decision in <u>McClendon</u>, which considered a state-created danger claim arising out of an injury that occurred in 1993. In <u>McClendon</u>, this court concluded that the state-created danger theory was not clearly established law in the Fifth Circuit in 1993. The <u>McClendon</u> court first noted that this court had only considered the state-created danger theory once prior to 1993, in <u>Salas v. Carpenter</u>, 980 F.2d 299 (5th Cir. 1992), and that <u>Salas</u> "did not address the viability of the state-created danger theory or define the contours of an individual's right to be free from state-created dangers." <u>McClendon</u>, 305 F.3d at 330. The court therefore found that <u>Salas</u> was, on its own, "certainly insufficient" to provide a defendant in 1993 with the requisite notice that his conduct

27

violated the plaintiff's substantive due process rights.  Id.

The McClendon court then proceeded to consider the relevant authority from other circuits.  The court observed that "six circuits had sanctioned some version of the state-created danger theory in July of 1993" and that no circuit had, to that point, expressly rejected the theory.  Id.  Despite this apparent consensus, this court found that "the mere fact that a large number of courts had recognized the existence of a right to be free from state-created danger in some circumstances" was insufficient to make the theory clearly established in the Fifth Circuit, in part because there was little agreement among those courts as to the specific contours of that right.  Id. at 330-32 ("[W]hile a number of our sister circuits had accepted some version of the state-created danger theory as of July of 1993, given the inconsistencies and uncertainties within this alleged consensus of authorities, an officer acting within the jurisdiction of this court could not possibly have assessed whether his or her conduct violated this right in the absence of explicit guidance from this court or the Supreme Court.").  The en banc court in McClendon also found it significant that none of the cases from other circuits applying the state-created danger theory had done so in a

28

factual context similar to that case. Id. at 332.

Applying the principles of McClendon to this case, we conclude that the state-created danger theory was not clearly established law in this circuit, with respect to the specific facts here or otherwise, by November 18, 1999, and, accordingly, the defendants are entitled to qualified immunity from plaintiffs' section 1983 claims. As was the case in 1993, the relevant date in McClendon, neither the Supreme Court nor this court had expressly recognized the validity of the state-created danger theory as applied to any case prior to November 1999. Plaintiffs do not claim otherwise. Rather, they argue that the state-created danger theory was clearly established in the Fifth Circuit by November 1999 because (1) between 1993 and 1999, this court discussed the state-created danger theory, and set out the necessary elements of the theory as it had been recognized by other circuits, on numerous occasions; and (2) the state-created danger theory was clearly established in certain respects in the majority of the federal circuits by November 1999.

In light of this court's historical reticence towards adopting the state-created danger theory, however, neither this court's discussions of the theory nor our sister circuits'

adoption of it convinces us that a reasonable official in any of the defendants' shoes would have had fair notice on or before November 18, 1999 that his conduct with respect to the danger created by the Texas A&M bonfire stack could violate the students' constitutional rights. Plaintiffs are correct that a number of this court's decisions prior to 1999 spelled out the basic and essential elements that a plaintiff would need to establish in order to state a claim under the state-created danger theory, if it were to be adopted. See Randolph, 130 F.3d at 731; Doe, 113 F.3d at 1415; Piotrowski I, 51 F.3d at 515-16; Johnson, 38 F.3d at 201; Leffall, 28 F.3d at 530-31. In each of those cases, however, this court also expressly noted that the theory had never been adopted in this circuit. See Randolph, 130 F.3d at 731; Doe, 113 F.3d at 1415; Piotrowski I, 51 F.3d at 515; Johnson, 38 F.3d at 201; Leffall, 28 F.3d at 530. Because this court's pre-November 1999 decisions evince substantial uncertainty as to the existence of even the general right that the plaintiffs claim has been violated, those decisions cannot be said to have given defendants fair warning that any of their actions or omissions with respect to the 1999 Texas A&M bonfire construction could violate the affected students' constitutional rights.

Moreover, similar to the situation in McClendon, any consensus of the other federal circuits in adopting various formulations of the state-created danger theory is insufficient for this court to find that the theory was clearly established in this circuit as applied to these cases. Although a majority of federal circuits had approved of the state-created danger theory in a general sense by November 18, 1999, there was not a consensus among those courts as to the contours of the underlying substantive due process right, see McClendon, 305 F.3d at 331, Butera, 235 F.3d at 653-54, and the plaintiffs have not pointed to (and this court has not found) any pre-collapse cases in which an appellate court applied the state-created danger theory on facts even remotely analogous to the facts of these cases. Accordingly, we find that the adoption of the state-created danger theory in other circuits before November 1999 was insufficient to give the University officials fair notice that their conduct violated the students' constitutional rights.[13]

---

[13]Where this court has previously spoken on, and refrained from deciding, an issue, a consensus of authority from other jurisdictions would likely need to be particularly strong and clear before it could support a finding that the legal principle in question was clearly established law in this circuit. See McClendon, 305 F.3d at 332 n.12.

31

We therefore conclude that the state-created danger theory was not clearly established law in the Fifth Circuit on November 18, 1999, and defendants are entitled to qualified immunity.[14]

## IV. Conclusion

For these reasons, we conclude that defendants are entitled to qualified immunity from suit based on plaintiffs' section 1983 claims, and we therefore AFFIRM the summary judgment of the district court dismissing plaintiffs' complaints.

AFFIRMED.

---

[14]As our finding that the state-created danger theory was not clearly established in this circuit at the time of the defendants' conduct would be the same whether or not plaintiffs established that defendants' conduct violated their constitutional rights, one might reasonably suggest that we could simply have proceeded directly to the determinative second step of the qualified immunity inquiry. The Supreme Court has made it clear, however, that courts considering qualified immunity defenses ordinarily should address the issue of clearly established law only if the plaintiff's allegations establish a constitutional violation. Lewis, 523 U.S. at 841 n.5. The reason for this rule is, at least in part, because "if the policy of avoidance were always followed in favor of ruling on qualified immunity whenever there was no clearly settled constitutional rule of primary conduct, standards of official conduct would tend to remain uncertain, to the detriment of both officials and individuals." Id.