IN THE UNITED STATES COURT OF APPEALS
FOR THE FIFTH CIRCUIT

United States Court of Appeals
Fifth Circuit

**F I L E D**

**August 9, 2007**

Charles R. Fulbruge III
Clerk

No. 06-50759

ADAM EUGENE MARTIN

Plaintiff-Appellant

v.

VERNON PITTMAN; DAN MILLS; TIM GAGE; DANIEL RIVERA

Defendants-Appellees

Appeal from the United States District Court
for the Western District of Texas
USDC No. 1:05-CV-545

Before HIGGINBOTHAM, WIENER, and GARZA, Circuit Judges.

PER CURIAM:[*]

Plaintiff-Appellant Adam Eugene Martin was indicted by a federal grand jury on seven counts of bank robbery and one count of attempted bank robbery, on all counts of which he was ultimately convicted.[1]  Prior to Martin's federal trial, he had been in the custody of the Texas Department of Justice, Correctional Institutions Division ("TDJ-CID") on separate and unrelated state charges.  Defendants-Appellees Tim Gage and Daniel Rivera, Bastrop County

---

[*] Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

[1] United States v. Martin, 431 F.3d 846 (5th Cir. 2005).

(Texas) deputy sheriffs, transferred Martin from the custody of the TDJ-CID to the Federal Bureau of Prisons, which retained custody of Martin until his trial on the federal bank robbery charges.

In the instant civil rights lawsuit, Martin contends that his state-to-federal transfer violated his procedural due-process rights arising under the Interstate Agreement on Detainers Act ("IADA") and the Uniform Criminal Extradition Act ("UCEA"). Concluding that Martin has abandoned some of his claims on appeal and that he has failed to allege a cognizable constitutional violation as to his remaining claims, we affirm the district court's judgment dismissing Martin's suit for failure to state any claim on which relief may be granted.

## I. FACTS AND PROCEEDINGS

In September 2003, Martin was indicted by a federal grand jury in Texas on seven counts of bank robbery and one count of attempted bank robbery. Later that month, Martin was arrested and incarcerated in the Travis County (Texas) Jail ("TCJ") on unrelated offenses. Martin was transferred from the TCJ to the Travis State Jail ("TSJ") in mid January 2004. Defendant-Appellee Vernon Pittman was the warden of the TSJ.

Late in January 2004, Defendant-Appellee Dan Mills, who was the assistant United States Attorney handling the federal prosecution against Martin, filed petitions for two writs of habeas corpus ad prosequendum with the district court.[2] The magistrate judge to whom the case had been referred granted the petitions and issued the two writs. The United States Marshall then placed a detainer on Martin with the TSJ.[3]

---

[2] Writs of habeas corpus ad prosequendum are issued by federal courts pursuant to the express authority of a federal statute — 28 U.S.C. § 2241(a), (c)(5) — and are to take effect immediately. United States v. Mauro, 436 U.S. 340, 357, 360 (1978).

[3] A detainer, unlike a writ of habeas corpus ad prosequendum, may be lodged against a prisoner on the initiative of a prosecutor or law enforcement officer. Id. at 358. In addition,

The following month, Gage and Rivera physically transferred Martin to federal custody. The record does not reflect whether the transfer was made pursuant to the ad prosequendum writs or to the detainer. The record does make clear, however, that, prior to the transfer, no request for approval of the transfer was submitted to the Governor of Texas, and Martin was not afforded a pre-transfer hearing.

Proceeding pro se in July 2005, Martin filed the instant lawsuit, which was immediately referred to the magistrate judge. In it, each of the four defendants were sued in their official and individual capacities. In his pleadings, Martin alleged that his transfer from state to federal custody violated his procedural due-process rights under the Fourteenth Amendment. Specifically, Martin alleged that (1) Mills violated Martin's constitutional rights as guaranteed under the IADA by failing to request approval from the Governor prior to having Martin transferred to federal custody, and (2) Pittman, Gage, and Rivera, violated Martin's constitutional rights arising under both the IADA and UCEA by transferring him without first affording him a pre-transfer hearing. Martin contends that, as neither the request to the Governor nor the pre-transfer hearing was provided, each of the defendants violated Martin's due-process rights.

Each defendant filed a motion to dismiss, contending that neither the IADA nor UCEA required approval from the Governor for Martin's transfer or afforded Martin the right to a pre-transfer hearing. Thus, all the defendants claimed that Martin failed to allege a cognizable constitutional claim. In addition, each defendant asserted individual defenses: (1) Mills claimed sovereign immunity, absolute prosecutorial immunity, and qualified

---

a detainer does not require the immediate presence of the prisoner, but simply puts prison officials on notice that a prisoner is wanted in another jurisdiction for trial after his release from prison. Id.

prosecutorial immunity; he also advanced the affirmative defense that Martin's claims against him were precluded by the physical-injury requirement of the Prison Litigation Reform Act ("PLRA"); (2) Pittman claimed Eleventh Amendment sovereign immunity and qualified immunity; and (3) Gage and Rivera claimed qualified immunity; they also advanced the affirmative defense that Martin's claims were precluded by the physical-injury requirement of the PLRA.

After holding a hearing on the motions and treating them as having been consolidated, the magistrate judge rendered a report and recommendation that all of the motions be granted and that Martin's claims be dismissed. In particular, the magistrate judge determined that (1) the claims against Mills in his official capacity were barred by sovereign immunity and those against him in his individual capacity were barred by absolute prosecutorial immunity, (2) the claims against Pittman in his official capacity were precluded by Eleventh Amendment sovereign immunity, (3) Martin had no procedural due-process rights under the IADA and UCEA — either the right to a request to the Governor or the right to a pre-transfer hearing — so he could not assert a cognizable constitutional claim, (4) the claims against Pittman, Gage, and Rivera in their individual capacities were barred by qualified immunity, given Martin's failure to allege a viable constitutional violation, and (5) the claims against Mills, Gage, and Rivera were not barred by the physical-injury requirement of the PLRA. Martin timely filed objections to the report and recommendation, seeking review by the district court. The district court adopted the magistrate judge's report and recommendation in its entirety, granted the defendants' motions to dismiss, and dismissed Martin's lawsuit. Martin timely filed a notice of appeal.

## II. LAW AND ANALYSIS

A. Standard of Review

We review de novo a district court's ruling on a motion to dismiss, accepting the allegations in the complaint as true.[4] The motion may be granted "only if it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim that would entitle him to relief."[5] A plaintiff's conclusional allegations and legal assertions, unlike his factual allegations, are not accepted as true and will not suffice to prevent a motion to dismiss.[6]

B.     Claims Against Mills; Claim Against Pittman in His Official Capacity

In his appellate briefs, Martin makes no reference — express or implied — to either the existence, or the district court's disposition of, (1) Mills' sovereign immunity and absolute prosecutorial immunity defenses or (2) Pittman's Eleventh Amendment sovereign immunity defense. Instead, Martin's briefing focuses exclusively on his contention that the IADA and UCEA provide him procedural due-process rights and that the defendants violated these rights in an objectively unreasonable manner, stripping the defendants of any qualified immunity protection.

As Martin is a pro se litigant, we liberally construe his briefs and apply less stringent standards in interpreting his arguments.[7] To preserve an argument on appeal, however, even a pro se litigant must make at least a colorable attempt to raise and brief that argument.[8] As to Mills, Martin has made no such effort. By failing to mention arguments relative to his claims against Mills, even in passing, Martin has abandoned them. The same holds true for his claim against Pittmann in his official capacity. We therefore affirm

---

[4] Scanlan v. Texas A&M Univ., 343 F.3d 533, 536 (5th Cir. 2003).

[5] Id.

[6] Fernandez-Montes v. Allied Pilots Ass'n, 987 F.2d 278, 284 (5th Cir. 1993).

[7] Grant v. Cuellar, 59 F.3d 523, 524 (5th Cir. 1995).

[8] Yohey v. Collins, 985 F.2d 222, 224-25 (5th Cir. 1993).

the district court's judgment dismissing Martin's claims against Mills in both his official and individual capacities, and Martin's claim against Pittman in his official capacity.

C.    Remaining Claims

Both the IADA and UCEA regulate the transfer of prisoners from one jurisdiction — the sending State — to the custody of another jurisdiction — the receiving State.[9]  The IADA, which has been adopted by the United States and expressly includes the United States as a State, establishes two ways by which a prisoner against whom a detainer has been lodged may be transferred to the custody of the receiving State: Article III allows the prisoner to initiate the transfer himself, and Article IV allows the prosecutor in the receiving State to do so.[10]

Under Article IV, which is the only IADA provision relevant here, the prosecutor in the receiving State must first file written notice of a court-approved custody request with authorities in the sending State.[11]  After such a request is made, the prisoner and prosecutor must wait up to thirty days for the governor of the sending State to decide whether to disapprove of the request.[12] If the governor either timely approves the request or does not affirmatively act to disapprove the request within that time, the prisoner is transferrable to the custody of the receiving State.[13]  Once transferred, he must be brought to trial within one hundred and twenty days after his arrival.[14]

---

[9] Cuyler v. Adams, 449 U.S. 433, 443 (1981).

[10] Id. at 443-44; 18 U.S.C. app. § 2.

[11] Cuyler, 449 U.S. at 444.

[12] Id.

[13] Id.

[14] Id.

In United States v. Mauro, the Supreme Court held that a writ of habeas corpus ad prosequendum is not a "detainer" for purposes of the IADA.[15]  Noting the historical, procedural, and effectual difference between these two custodial devices, the Court determined that agents of the federal government have no duty to comply with the IADA when state prisoners are transferred to federal custody pursuant to an ad prosequendum writ.[16]

Therefore, if Martin was transferred pursuant to an ad prosequendum writ, Mills had no duty to comply with the IADA and could bypass the Governor altogether.  Only if Martin was transferred to federal custody via a detainer would Mills have had a duty under the IADA to request approval of the transfer from the Governor before having Martin transferred to federal custody.

Although there is no evidence in the record to confirm which vehicle was employed in transferring Martin, making it necessary for us to assume, for purposes of the instant motions, that Martin was transferred via a detainer, as his complaint alleges, we need not reach this issue today.  As Martin has asserted his failure-to-request-approval claim against only Mills, and Mills is immune from suit, this issue is moot.  We therefore proceed to address Martin's remaining claims, viz., that Pittman, Gage, and Rivera failed to afford him a pre-transfer hearing.

There is nothing in the IADA that explicitly provides a pre-transfer hearing to prisoners involuntarily transferred under Article IV, but section (d) of that Article specifies:

> Nothing contained in this article shall be construed to deprive any prisoner of any right which he may have to contest the legality of his delivery as provided in paragraph (a) hereof, but such delivery may not be opposed or denied on the ground that the executive authority

---

[15] 436 U.S. at 360-61.

[16] Id.

of the sending State has not affirmatively consented to or ordered such delivery.

In Cuyler v. Adams, the Supreme Court was required to determine the validity of a prisoner transfer from Pennsylvania to New Jersey pursuant to the IADA.[17] The Court held that the quoted language works to incorporate into the IADA a prisoner's rights to a pre-transfer hearing under § 10 of the UCEA.[18] Thus, a prisoner in the custody of a State that has adopted the UCEA is entitled to a pre-transfer hearing before being transferred to another state pursuant to Article IV of the IADA; and Texas has adopted the UCEA.[19]

Relying on Cuyler, Martin contends that, under the IADA's incorporation of the UCEA's pre-transfer hearing requirement, Pittman, Gage, and Rivera violated his due-process rights by transferring him to federal custody pursuant to the IADA without affording him a pre-transfer hearing. We disagree.

By its express terms, the UCEA — including the version adopted by Texas — applies only to transfers between the several states, e.g., Pennsylvania to New Jersey in Cuyler. Unlike the IADA, the UCEA's definition of "State" does not include the federal government.[20] Thus, the UCEA facially has no application to transfers involving the federal government as either the sending State or the receiving State. As the UCEA is not applicable to transfers involving the federal government, there are here no UCEA pre-transfer hearing rights to be incorporated by the IADA. Martin thus had no right to a pre-transfer hearing. As such, he has failed to raise a cognizable constitutional violation.

---

[17] 449 U.S. at 436.

[18] Id. at 447-450. Of course, this right is only incorporated if the sending State has adopted the UCEA.

[19] Tex. Code Crim Proc. § 51.13.

[20] Nor could it likely extend so far without clear congressional approval. Otherwise, such an extension would raise serious Supremacy Clause concerns.

## III. <u>CONCLUSION</u>

Based on the applicable law and our extensive review of the parties' briefs and the record on appeal, and giving this pro se litigant the benefit of the doubt, we hold that (1) Martin abandoned his claims against Mills in his official and individual capacities, and his claim against Pittman in his official capacity, by failing to raise these issues on appeal; and (2), because the UCEA does not apply to transfers to or from the federal government, Martin had no UCEA rights subject to incorporation by the IADA and thus failed to allege a constitutional violation against any defendant. We affirm the district court's judgment dismissing Martin's lawsuit for failure to state a claim on which relief may be granted.

AFFIRMED.