NOTE: This disposition is nonprecedential.

# United States Court of Appeals for the Federal Circuit

---

**TDE PETROLEUM DATA SOLUTIONS, INC.,**
*Plaintiff-Appellant*

**v.**

**AKM ENTERPRISE, INC., DBA MOBLIZE, INC.,**
*Defendant-Appellee*

---

2016-1004

---

Appeal from the United States District Court for the Southern District of Texas in No. 4:15-cv-01821, Judge Gray H. Miller.

---

Decided: August 15, 2016

---

MALCOLM EDWIN WHITTAKER, Whittaker Law Firm, Houston, TX, argued for plaintiff-appellant.

PETER E. MIMS, Vinson & Elkins LLP, Houston, TX, argued for defendant-appellee. Also represented by JEFFREY TA-HWA HAN, Austin, TX.

---

Before LOURIE, WALLACH, and HUGHES, *Circuit Judges.*

HUGHES, *Circuit Judge*.

TDE sued Moblize for infringement of a patent directed to processing sensor data on an oil well drill. The district court dismissed the suit on the pleadings, finding that the asserted claims are patent-ineligible under 35 U.S.C. § 101. We agree and affirm the district court's judgment.

I

TDE and Moblize are competitors that provide services to oil drilling companies. TDE filed suit against Moblize in the United States District Court for the Southern District of Texas, alleging that Moblize infringes U.S. Patent 6,892,812.

The '812 patent describes various processes for determining the state of an oil well drill. The disclosed processes start by receiving data from sensors deployed on the oil well, such as an RPM sensor that detects the number of revolutions per minute of the drill string (on which the drill bit is affixed), or a fluid pressure sensor that detects the pressure of drilling fluid in the stand pipe. *See* '812 patent, col. 4–5. After receiving this sensor data, the processes then validate the data, i.e., accept data that is within an expected range and discard data that is expected to be erroneous. *See id.* at col. 6 ll. 30–47. Finally, based on the valid sensor data, the processes determine what the present state of the oil well drill is, e.g., drilling, sliding, or bore hole conditioning. *See id.* at col. 6 l. 48–col. 7 l. 24. The '812 patent discloses several specific flowcharts that may be used in this last step to determine the state of the oil well drill. *See id.* at Figs. 3, 4, 5A, and 5B.

The parties agree that claim 1 of the '812 patent is representative:

1. An automated method for determining the state of a well operation, comprising:

storing a plurality of states for a well operation;

receiving mechanical and hydraulic data reported for the well operation from a plurality of systems; and

determining that at least some of the data is valid by comparing the at least some of the data to at least one limit, the at least one limit indicative of a threshold at which the at least some of the data do not accurately represent the mechanical or hydraulic condition purportedly represented by the at least some of the data; and

when at least some of the data are valid, based on the mechanical and hydraulic data, automatically selecting one of the states as the state of the well operation.

Moblize moved for dismissal of the suit under Federal Rule of Civil Procedure 12(b)(6), on the theory that the claims are patent-ineligible under § 101. The district court granted the motion, finding that the claims are directed to the abstract idea of "storing data, receiving data, and using mathematics or a computer to organize that data and generate additional information," J.A. 9, and that the claims fail to recite an inventive concept beyond that abstract idea.

TDE appeals. We have jurisdiction under 28 U.S.C. § 1295(a)(1).

## II

This court reviews a district court's dismissal for failure to state a claim under the law of the regional circuit. *See OIP Techs., Inc. v. Amazon.com, Inc.*, 788 F.3d 1359, 1362 (Fed. Cir. 2015). The Fifth Circuit reviews challenges to a dismissal for failure to state a claim under FRCP 12(b)(6) de novo, taking the allegations of the complaint to

be true. *See Scanlan v. Texas A&M Univ.*, 343 F.3d 533, 536 (5th Cir. 2003). This court reviews the district court's determination of patent eligibility under § 101 de novo. *See DDR Holdings, LLC v. Hotels.com, L.P.*, 773 F.3d 1245, 1255 (Fed. Cir. 2014).

## III

A patent may be obtained for "any new and useful process, machine, manufacture, or composition of matter, or any new and useful improvement thereof," 35 U.S.C. § 101, but "[l]aws of nature, natural phenomena, and abstract ideas are not patentable." *Alice Corp. v. CLS Bank Int'l*, 134 S. Ct. 2347, 2354 (2014). The now-familiar *Alice* test instructs that a patent claim is ineligible under § 101 if (1) the claim is "directed to one of those patent-ineligible concepts" (i.e., a law of nature, natural phenomena, or abstract idea) and (2) the claim elements, when considered "both individually and 'as an ordered combination'" do not "'transform the nature of the claim' into a patent-eligible application." *Id.* at 2355 (quoting *Mayo Collaborative Servs. v. Prometheus Labs., Inc.*, 132 S. Ct. 1289, 1296–98 (2012)).

Turning to the first step of the *Alice* inquiry, we conclude that claim 1 is directed to an abstract idea. The steps of claim 1 recite operations performed by any general-purpose computer. As we recently reiterated in *Electric Power Group, LLC v. Alstom S.A.*, No. 2015-1778, 2016 WL 4073318, at *3 (Fed. Cir. Aug. 1, 2016), claims generally reciting "collecting information, analyzing it, and displaying certain results of the collection and analysis" are "a familiar class of claims 'directed to' a patent-ineligible concept." Claim 1 of the '812 patent recites all but the "displaying" step. Therefore, it is evident from our precedent that claim 1 is the sort of data gathering and processing claim that is directed to an abstract idea under step one of the *Alice* analysis. *See, e.g.*, *id.*; *OIP Techs.*, 788 F.3d at 1363; *Digitech Image Techs., LLC v.*

*Elecs. For Imaging, Inc.*, 758 F.3d 1344, 1351 (Fed. Cir. 2014).

Turning to the second step of the *Alice* inquiry, we find nothing in claim 1 that adds anything more to the abstract idea of storing, gathering, and analyzing data. TDE does not and cannot argue that storing state values, receiving sensor data, validating sensor data, or determining a state based on sensor data is individually inventive. And none of TDE's arguments show that some inventive concept arises from the ordered combination of these steps, which, even if true, would be unpersuasive given that they are the most ordinary of steps in data analysis and are recited in the ordinary order. While the specification arguably provides specific embodiments for the step of "automatically selecting one of the states as the state of the well operation," claim 1 recites none of those details. Instead, claim 1 simply recites generic computer functions that amount to nothing more than the goal of determining the state of an oil well operation. As we discussed at greater length in *Electric Power*, the claims of the '812 patent recite the *what* of the invention, but none of the *how* that is necessary to turn the abstract idea into a patent-eligible application. *See Electric Power*, 2016 WL 4073318, at *4–5. Therefore, we find that claim 1 is patent-ineligible under § 101.[1]

---

[1]    Although TDE asserted the other 114 claims contained in the '812 patent, it made no attempt in either its briefs or at oral argument to distinguish those claims from representative claim 1, other than to state that the systems (reciting generic hardware) are different from the methods. *See* Oral Argument at 5:00–6:40 (July 5, 2016), available at http://oralarguments.cafc.uscourts.gov/default.aspx?fl=2016-1004.mp3. Those arguments are insufficient to demonstrate eligibility under § 101.

IV

For these reasons, we affirm the district court's judgment finding claims 1–115 patent-ineligible under § 101.

**AFFIRMED**